PRATT *v.* NAKDIMEN.

Opinion delivered May 8, 1911.

1. ATTACHMENT—LIABILITY OF MATERIALS FURNISHED TO CONTRACTOR.—Where materials are furnished to a contractor to be used in the construction of a building, the presumption is that they were furnished on the credit of the building and its owner; and unless such presumption is rebutted by proof that they were furnished on the personal credit of the contractor, they will not be subject to attachment at the instance of the contractor's creditors. (Page 298.)

2. PLEADING—FAILURE TO ANSWER—EFFECT.—Although the owner of a building did not deny the validity of a lien of an attachment upon property alleged to belong to his absconding contractor, but used in the building, yet where other lien claimants sought to have the equities of all lien claimants adjusted in a consolidated suit in equity, a finding of that court against such attachment may on appeal be insisted upon by the owner of the building. (Page 300.)

3. ESTOPPEL—INCONSISTENT POSITIONS.—One who furnished materials for use in a building can not at the same time claim a materialman's lien therefor and enforce an attachment lien for the purchase money thereof. (Page 300.)

4. MECHANICS' LIEN—SUM TO BE PRORATED.—In determining the amount to be prorated among several lien claimants, the amount which the contractor agreed to erect the building for should be added to a sum for which he sold the old material already on the ground. (Page 301.)

Appeal from Sebastian Chancery Court; *J. V. Bourland,* Chancellor; affirmed with modification.

STATEMENT BY THE COURT.

Appellee, Nakdimen, entered into a contract with one Charles Miller, doing business as the Miller Construction Company, for removing a three-story brick building on a certain lot in the city of Fort Smith, and for the erection of a six-story fireproof building thereon. The contract price was $51,900. Miller removed the old building, for which work he was allowed $681.50. He sold the material in the old building for $415.50. He began the erection of the new building, but failed to complete it. On December 5, 1909, he abandoned his contract, and left the State, with the intent of defrauding his creditors, laborers and material furnishers, and without leaving enough property to satisfy their claims. The appellants furnished material for the building. The Chickasaw Iron Works furnished certain steel and iron work,

especially designed and constructed for that building. All this material had been delivered pursuant to the contract before the contractor abandoned the work. Material of the value of $2,286 had been used in the building, and material of the value of $1,400 was on the ground, but had not been incorporated in the building. Miller had paid appellant Chickasaw Iron Works $1,320.15, leaving a balance due it, under his contract for the iron and steel work furnished, of $2,365.85. The appellant, Chickasaw Iron Works, filed its lien and brought suit in the chancery court to have same enforced on the building, and also procured an attachment against Miller, and had same levied on certain steel work, corrugated iron bars, pressed brick and window frames that had been delivered on the building site but had not been used in the building. W. D. Pratt, another appellant, had furnished materials to the amount of $1,005, all of which had been used in the building. Miller had paid on this bill the sum of $502.40, leaving a balance of $502.60 due. Pratt brought suit at law, and had attachments issued against Miller, and had the above-mentioned property levied upon to secure his claim. The appellant Corrugated Bar Company furnished Miller corrugated bars worth $889. He paid $166.22, leaving a balance of $722.88. Bars of the value of $170.78 had been used in the building. The remaining bars had been delivered at the building site. The Corrugated Bar Company likewise brought suit similar to Pratt's, and in addition to having attachment levied on the same property attached by the other appellants, had certain window frames then on the ground attached. These several attachments were levied in the following order: First, W. D. Pratt; second, Corrugated Bar Company; third, Chickasaw Iron Works. By agreement of all parties the suits at law were transferred to the chancery court, and there consolidated and tried. No appearance was made by Miller, though he was duly served. Nakdimen answered, denying that any of the appellants were entitled to liens against his building, alleging, in substance, that the sums paid by him to Miller and by Miller paid out on lienable claims, together with the amount necessary to complete the building according to his contract, after Miller had abandoned the same, exceeded the original contract price with Miller, and that therefore he, Nakdimen, was not liable to the creditors of Miller in any further sums.

No question was made in the answer as to the validity of the attachments. The amount of appellants' claim was not denied, and it was conceded that appellants had complied with the law in respect to notice and the filing of their claims for lien. After Miller abandoned the contract Nakdimen entered into a contract with the Manhattan Construction Company to perform all the work and provide all necessary materials to complete the Nakdimen building in accordance with the original plans, for $41,412, $35,632 of which was for materials and labor and $4,000 of which was for "services or profit" of the contractor, the Manhattan Construction Company. It was provided that the bills for labor, materials and other expenses of the contractor should not exceed the sum of $37,412, and that the sum of $4,000 as "services or profit" was to be paid to the contractor at the final completion of the work. It was further agreed between Nakdimen and the Manhattan Construction Company that all materials on the ground, including certain mill work from the Cole Manufacturing Company, stored at railroad depot, and window frames from the Wise Manufacturing Company, if used by the Manhattan Con-Construction Company, should be paid for by Nakdimen; that the Manhattan Construction Company should contract for said material with the owners of same, and that the cost thereof should be added to the contract price to be paid the Manhattan Construction Company. It was also further agreed that, in case the Manhattan Construction Company should not use said material, it could get like material from other parties, same to be paid for by Nakdimen in addition to the aforesaid contract price. The appellants and the appellee entered into an agreement whereby the Manhattan Construction Company was allowed to use so much of the materials under attachment as might be necessary for the completion of the building, paying the invoice price thereof into the Merchants' National Bank, to remain until such time as the parties could settle their conflicting demands. It further agreed "that no lien or other liability shall attach to the real estate of said Nakdimen by reason of the use of said brick, steel, etc., in said building, neither party waiving any right to mechanics' lien, if any acquired." The court found that the entire cost of the completion of the building, after Miller abandoned it, was $41,412, plus the material on the ground not used by Miller but afterwards

used by the Manhattan Construction Company, towit: $3,504.62, making a total, for the completion of the building, of $44,916.62; that the total sum to be figured as liens is $9,306.22, paid by Miller before he abandoned the building, and the following claims now allowed by the court as liens, towit: Chickasaw Iron Works, $2,365.85; Corrugated Bar Company, $722.78; W. D. Pratt, $502.60; and others, making a total of $16,263, lien claims. The difference between the original contract price with Miller, $51,900, and the cost to complete the building after he abandoned it ($44,-916.62), amounting to $6,983.38, is the sum to be distributed to all the lienors, making the ratio to each equal to .4294 per cent. This percentage is to be figured upon the entire amount of the original claims of the lienors, and from the *pro rata* or percentage thus obtained shall be taken the amount already paid by Miller. If this exceeds the *pro rata* or percentage, the lienor takes nothing; if it be less, he is entitled to the difference between the said percentage and the said payment. The court found that the appellants obtained no liens on the property they had attached, and that the agreement between them and the vendors of such property, as to the disposition of the proceeds of the sale thereof under the attachments, was void. The court further found that the money spent by the Miller Construction Company in removing the old buildings and foundations is a sum for which a lien could have been claimed by the Miller Construction Company, and is properly included in the total sum of the liens against said building for the purpose of fixing the percentage due upon the liens fixed by the decree; that the amount received by the Miller Construction Company for material sold from the wreckage of the old building is not to be credited upon the sum paid out by it and classed herein as lienable items; that the $4,000 item termed as "for their services or profit" in the contract with the Manhattan Construction Company is properly included as a part of the cost of completing said building, for which said Nakdimen is entitled to credit. The court rendered a decree in favor of appellants in acordance with its findings, declared a lien for the amounts to be ascertained under those findings, and directed the property sold to satisfy the judgments if not paid within thirty days. W. D. Pratt and Corrugated Bar Company excepted to so much of the decree as declared the attachments and the liens

thereby obtained null and void, and to that part of the decree annulling the contracts and agreements by which the Manhattan Construction Company used the attached material in completing the building. Appellants prayed an appeal to the Supreme Court, which was granted, and has been duly prosecuted.

*Read & McDonough* and *Kimpel,* for appellants.

Vendors of materials can obtain a mechanics' lien for only such part of their materials as is actually incorporated in the building; the doctrine that a mechanics' lien results from the mere delivery of material upon a job has been repudiated. 84 Ark. 561-2.

*Coleman & Lewis* and *Falconer & Woods,* for appellants.

1. The attachments were valid. There can be no waiver of one remedy simply because the other is invoked. 36 Ark. 355. Filing an attachment is not a waiver of a mechanics' lien, and the converse is true. Merely taking additional security, or changing the form of the indebtedness, or pursuing one remedy rather than another, does not defeat a statutory lien. 178 Mass. 163; 50 N. E. 630; 59 Atl. 398; 69 L. R. A. 497; 49 Pac. 768; 83 N. W. 366; 40 S. W. 876, 966; 87 N. W. 458; 90 Ark. 340; 63 *Id.* 367; 48 *Id.* 267; 45 *Id.* 313; 32 *Id.* 233.

2. Nakdimen was not entitled to credit for $4,000 paid to the second contractor for "services and profits" in completing the building. 77 Ark. 156, 159; 74 Ark. 528, 533; 65 *Id.* 183, 187; Kirby's Dig. § 6251, 4970; Acts 1899, p. 145, etc.

*Winchester & Martin,* for appellee.

1. A litigant cannot maintain inconsistent positions. 64 Ark. 215. If the lien is sustained, the attachment must fail. 39 Minn. 132; 39 N. W. 73; 64 Ark. 215. The title is not in the contractor. 18 Pa. St. 52; Phillips, Mech. Liens, § 152; Boisot, Mech. Liens, § 121. To change this rule, it must be shown that the material was sold on the personal credit of the contractor. 43 Kan. 684. The presumption is that material furnishers looked to the building and not to the contractor. 11 B. Mon. 337.

2. A mechanic's lien is not waived by suing out an attachment and levying same. 16 Cal. 140.

3. Corporations are protected under our laws just the same as individual contractors. Phillips, Mech. Liens, § 53; Kirby's Dig., § § 4975, 4979; 77 Ark. 156-159.

*Kimpel & Daily,* for W. D. Pratt in reply.

Many States have held that if material is sold to a contractor on the credit of the building he is constructing, and delivered at the building, the vendor of the material is entitled to a lien against the building the minute the material is delivered. But such is not the law in Arkansas. 84 Ark. 561.

*Coleman & Lewis* and *Falconer & Woods,* for appellants in reply.

Appellee's objections that appellant sought inconsistent remedies, and that it waived the attachment by asserting the lien, are unsound. That depends on the intention of appellant. 63 Ark. 367; 36 Ark. 355; 90 Ark. 340. The acceptance of a check is no presumption of payment. 48 Ark. 267. The court may, under a prayer for general relief, grant any relief that the facts stated will warrant. 76 Ark. 551; 39 Ark. 531; 15 Ark. 555; 19 Ark. 21; 56 Ark. 391. Objections to a complaint defective in form should be made by motion; if defective in substance, by demurrer. 72 Ark. 478; 20 Ark. 495. Issues not raised by the pleadings will not be considered here. 75 Ark. 312; 74 Ark. 41; *Id.* 557; *Id.* 88; 72 Ark. 539; 51 Ark. 351; 71 Ark. 242; 132 S. W. 462; 106 N. Y. 283; 12 N. E. 607; 60 Am. Rep. 449.

WOOD, J., (after stating the facts). First. The question presented by the appeal of Pratt is, can an attachment be levied upon materials which have been furnished a contractor, and delivered at the site of a building, to be used in its construction, but which, at the time of the levy, have not been incorporated in the building? It is necessary for us to pass upon the validity of Pratt's attachment, for the reason that the remedies sought by him are not inconsistent but concurrent and cumulative. He is not seeking to have an attachment on materials furnished by him, and also at the same time asking to have a material furnisher's lien declared for the amount of such materials. His case in this respect differs, as we shall see later on, from that of the other appellants. In *Central Lumber Co.* v. *Braddock Land & Timber Co.,* 84 Ark. 560, we held that "under Kirby's Digest, § 4970, giving a material man a lien for materials furnished for any building, by virtue of a contract with the owner, materials furnished

for the building must be actually used in it before a lien will be acquired." The only question in that case was, when does the lien of the material furnisher attach under the mechanics' lien statute? It was held that it could not attach until the materials had been used in the building, but that the presumption obtained that materials delivered at the building site, to be used in the construction of the building, had been so used until the contrary was shown. The question, whether or not the contractor had an ownership in the materials after they had been delivered at the building site, but before they had been used in the building, that would subject them to attachment, was not presented in the above case. It could have made no difference in the decision of that case whether the contractor was the owner or not, but here, in order to sustain his attachment, it is necessary for Pratt to show that the materials levied upon under his order of attachment were owned by the contractor. Under the mechanics' lien law, where materials are furnished a contractor to be used in the construction of a building, the presumption will be that the materials were furnished on the credit of the building and its owner, and such presumption will become conclusive unless rebutted by evidence showing that they were furnished on the personal credit of the contractor. See *Deatherage* v. *Henderson,* 43 Kan. 684; *Stephens* v. *Ward,* 11 B. Monroe (Ky.). 337. In the absence of proof that the materials were furnished the contractor on his personal credit, he can, at most, be held to have only a conditional or qualified ownership in the materials, for section 4980 of Kirby's Digest (mechanics' lien law) provides: "Any contractor or subcontractor, who shall purchase materials on credit and represent at the time of the purchase that the same are to be used in a designated building or other improvement, and shall thereafter use or cause to be used the said materials in the construction of any building or improvement, other than that designated, without the written consent of the person from whom the materials were purchased, with intent to defraud such person, shall be deemed guilty of a misdemeanor," etc.

If the contractor were the absolute owner, he would not be confronted with the above statute, "to molest and make him afraid" if he disposed of the materials furnished contrary to its provisions. If the absolute owner, he could do as he pleased with

them.   Whether the title to materials furnished, between the time
of the delivery of the same and the use thereof in the building,
be in the vendor of the materials or the owner of the building, it
is certain that the contractor has no such ownership as would
subject the materials to the attachment of appellant Pratt.   See
*White* v. *Miller*, 18 Pa. St. 52; Phillips, Mechanics' Liens, § 152;
Boisot, Mechanics' Liens, § 121.   Although appellee Nakdimen
did not, in his answer, deny the validity of the attachment, the
record shows that the suits at law were, by agreement of all
parties, transferred to the chancery, court and consolidated with
the suit of appellant Iron Works, and all tried as one suit.   Pratt's
attachment being prior to that of the other appellants, it would
have been impossible for the court to have determined the equities
of all the parties without passing upon the validity of Pratt's
attachment.   Under their prayer for general relief, the other
appellants were entitled to have their equities not only adjusted as
against the appellee, but also as among themselves.   The effect
of the transfer and consolidation was to bring all the questions
at issue by and between all the parties in review before the chan-
cellor.   The adjustment of the equities of appellants between
themselves necessarily involved the validity of Pratt's attachment,
because it was prior in time to that of the other appellants, and, if
valid, would lessen, to the extent of his claim, that of the next
attaching claimant in the order of time, provided, of course, the
other attachments were also valid.   The question having been
decided by the trial court, Nakdimen is entitled to insist here
upon the ruling that inures to his benefit, although he did not spe-
cifically deny the validity of the attachments in his answer.

Second.   The court did not err in dissolving the attach-
ments of the Corrugated Bar Company and the Chickasaw Iron
Works, the other appellants.   The material furnishers had a right
to recover and hold the materials furnished by them before they
had gone into the building, after the contractor had abandoned his
contract without paying for such materials.   Equity will disre-
gard the form by which the materials were impounded, and will
give appellants the benefit of the attachments for that purpose.
But appellants were assuming inconsistent positions in pressing
these attachments and at the same time asking that a material
furnisher's lien be declared for the amount of the materials which

they had furnished. Under the rule announced in *Central Lumber Co.* v. *Braddock Land & Timber Co., supra,* the appellants could not have a lien declared under the mechanics' lien law except upon the theory that the materials furnished by them had been delivered to Nakdimen, the owner of the building, and had been used by him in the construction of the building, and had become his property. On the other hand, the attachments could only be sustained upon the theory that this material furnished by appellants had not been used in the building, and had not been delivered to the owner and become his property. The positions are conflicting, and the appellants were pursuing inconsistent remedies. They could not acquire both an attachment and a material furnisher's lien for the same property. The court, having granted the prayer of appellants for a lien for the entire amount claimed by them for materials furnished under the mechanics' lien law, could not, in the same suit, also grant an attachment on the same property for the entire amount claimed by appellants. The prayer for mechanics' lien assumes that the materials have gone in the building, and are therefore not subject to attachment. "One is not allowed to avail himself of the advantages of inconsistent positions in a litigation concerning the same subject-matter." *Cox* v. *Harris,* 64 Ark. 215.

Appellants did not elect in the court below between the inconsistent remedies. Appellants might have had a material furnisher's lien for the amount of the material that was used in the building and a lien in equity on the residue of the material that had not gone in the building, but they could not have the material man's lien for the entire amount of their claims and the attachments, too. They pressed them both below, and are still insisting here that both the attachments and the material furnisher's liens should be sustained. There is a vast difference between asking cumulative remedies that are consistent with each other and asking for remedies that are wholly inconsistent.

Third. In determining the amount to be prorated among the lienors, the court should have added the $415.50, received by Miller for the old material, to the contract price of $51,900. Miller was to get the sum of $51,900 and the old material for removing the old building and erecting the new. The old material was sold by Miller for $415.50. So, in adjusting the equities of lien

claimants, the contract price to be paid by Nakdimen should be fixed at $52,315.50. The court correctly ruled that the sum of $681.50, paid by Miller for removing the old material, was a lienable claim. That sum represented the cost of labor that really went into the construction of the new building, for it was impossible to build the new building without the removal of the old. The court also correctly ruled that the sum of $4,000 should be allowed as a part of the cost of completing the building after Miller abandoned his contract. This sum, designated as "for their services or profit," under the contract, represented an amount which the owner actually had to pay in order to have the building completed according to the contract, and was therefore a necessary part of its cost.

The court erred in crediting Nakdimen, as part of the cost of completing the building, with the sum of $2,505.55, which was paid into the bank to cover the price of the attached material. It is true that Nakdimen, under his contract with the Manhattan Construction Company, was to pay for the material on the ground, but that material cost him nothing, since the money in bank is to be refunded on dissolution of the attachment. The result is the same as if the material had been placed in the building by Miller, appellants being given a lien for the price.

The decree of the chancery court will be modified by allowing the sum of $415.50 as a part of the contract price, making the total sum of the contract price $52,315.50. It will also be modified by striking said sum of $2,505.55 from the amount found to be the cost of completing the building, leaving the amount of $42,411.07 to be deducted from the original contract price. In all other respects the decree of the chancery court is affirmed, and the cause will be remanded with directions for further proceedings not inconsistent with this opinion.